IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                              CASE NO. 1:01-cr-00034-MP-AK

ROBIN GARDNER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 98, Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Defendant is represented by counsel. The Government has filed its response, Doc. 106, and Defendant has filed a reply. Doc. 105. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant was indicted on five counts of drug and firearms offenses: Counts One and Two charged him with possession with intent to distribute cocaine base; Count Three charged him with possession with intent to distribute more than 50 grams of cocaine base; Count Four charged him with using and carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of said crime; and Count Five charged him with possession of a firearm as a prior convicted felon. Doc. 9.

Before trial, Defendant sought the suppression of a confession he had made to law enforcement officers on the night of his arrest based on the "absence of Miranda warnings and some coercive activity by law enforcement." Docs. 24 & 73 at 3. After a hearing, the Court denied the motion. Doc. 31 & 73 at 37-38. The case proceeded to trial, with the parties stipulating that Defendant was a prior convicted felon and that the gun at issue, a nine millimeter handgun, had traveled in interstate commerce, Doc. 50, and on March 13, 2002, the jury found Defendant guilty on all charges. Doc. 53. Defendant was subsequently sentenced to life imprisonment on Count Three, concurrent 288-month sentences on Counts One and Two, a concurrent 120-month sentence on Count Five, and a consecutive 60-month sentence on Count Four. Docs. 58 & 64.

On appeal, Defendant raised several grounds for relief. In the first ground, he argued that the Court erred in denying his motion to suppress. Doc. 97. The Eleventh Circuit rejected that claim, finding: "After reviewing the record, we conclude that the district court did not err in finding that Gardner's confession was both voluntary and knowing." *Id*. Next, Defendant claimed that the court erred in denying his motion for judgment of acquittal "on the sufficiency of the evidence that he was in constructive possession of 50 grams or more of cocaine base." *Id*. The court rejected this claim as well. *Id*.

In the third ground for relief, Defendant argued that the court erred in denying his motion for judgment of acquittal on the appropriateness of the firearm charge in Count Four. *Id*. The appellate court found the evidence sufficient to support the conviction. *Id*. Next, Defendant claimed that the Court erred "in giving an additional instruction to the jury during their deliberations." *Id*. In that regard, the Eleventh Circuit found that "[b]ecause the district court

did not misstate the law or improperly guide the jury when it responded to the jury question, no error occurred." *Id*.

Finally, Defendant argued that the Court erred in "enhancing his Sentencing Guidelines score by two levels for obstruction of justice" after he took the stand in his own defense. *Id*. The court of appeals likewise rejected this claim, holding that the court "did not clearly err in finding that Gardner obstructed justice by committing perjury." *Id*.

The instant motion ensued. On this occasion, Defendant claims that his trial counsel was ineffective for failing (1) to move to limit the admission of certain testimony and (2) to object to the increased Guidelines range for relevant conduct drug amounts. Doc. 98. More specifically, Defendant maintains that the admission of the cooperating witness' testimony regarding a machine gun and a silencer and Defendant's need for a silencer ("somebody...was...bothering him, giving him a hard time," Doc. 83 at 17) without objection from counsel was unfairly prejudicial and detrimental to Defendant in violation of Fed. R. Evid. 403. Doc. 98. Defendant also argues that counsel should have preserved an *Apprendi* argument that in sentencing him, the Court had improperly found drug quantities by a preponderance of the evidence, rather than beyond a reasonable doubt. As noted, the Government has filed its response, arguing that neither claim is properly before the Court because they were not raised on direct appeal and that neither supports ineffectiveness of counsel. Doc. 106. Defendant has filed a reply, making a *Blakely* argument and asking the Court to delay its opinion until the issuance of *Booker*. Doc. 105. *Booker* has issued, and thus, the Court is prepared to rule.

## DISCUSSION

Since Petitioner's only claims involve whether counsel was ineffective, a consideration

of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would

interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the

best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001). "The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler,* 218 F.3d at 1313. "[O]missions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id*. (citation omitted).

As to the Government's argument that Defendant procedurally defaulted his claims, the Court finds it without merit. While Defendant certainly defaulted a ruling on the merits of either claim, in this proceeding he has not directly attacked the evidence or the sentencing but has attacked counsel's effectiveness in failing to object to certain matters during trial and sentencing. While the Court may be required to assess the merits of the matters underlying the claims that counsel was ineffective, ineffective assistance of counsel claims themselves cannot generally be raised on direct appeal, and thus, the Court believes that the claims are properly at issue.

Turning to the claims of ineffectiveness, the Court does not, however, find them to have merit. At trial, the cooperating witness, Gregory Haney, testified that during the course of his drug dealings with Defendant, Defendant "talk[ed] about a silencer for a pistol." According to Haney, Defendant "asked if I could get–know anybody who could get a silencer; he needed–wanted a silencer." Doc. 83 at 16-17. Haney testified that Defendant wanted a silencer for a pistol because he "had somebody that was giving–bothering him, you know, giving him a hard time. He didn't really specify. You know, he just said he had somebody that was bothering him." *Id*. at 17. At some point, Defendant gave Haney a nine millimeter handgun to be fitted with a silencer. *Id*. at 18. At the urging of the ATF agent, Haney then told Defendant that the

handgun had been damaged in fitting the silencer but that he had a machine gun with a silencer that he would trade Defendant for drugs . *Id*. at 23-25. Defendant was arrested during the trade with Haney. *Id*. at 27-28.

  While it is true that Defendant was not charged with possession of the machine gun or the silencer or with any kind of enforcement of a drug debt, it is clear (1) that this part of the Defendant's dealings with Haney was absolutely relevant and necessary to explain the events leading up to Defendant's arrest, and (2) that its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. To prove Count Four of the Indictment, the Government was required to establish that the nine millimeter pistol was used during and in relation to a drug trafficking crime, meaning that it had to prove active employment of the gun, not mere possession. 18 U.S.C. § 924(c)(1). *Bailey v. United States*, 516 U.S. 137, 143 (1995). Although the Government could certainly have omitted direct reference to a "machine gun" during its case in chief without damage to its case, it was perfectly appropriate for the Government to anticipate Defendant's defense that he wanted a gun with a silencer for some kind of ordinary purpose and to elicit testimony from Haney which would place such a defense at issue. Even if counsel had objected to the Government's reference to a "machine gun" and the Court had initially disallowed any reference to it, once Defendant took the stand and stated that he wanted a gun "[f]or protection of my family," Doc. 83 at 172, the Government could then have pointedly questioned Defendant on cross-examination regarding his agreement to accept a "machine gun" equipped with a silencer. In this manner, the Government could have impeached Defendant's reason for wanting a gun in the first place (which, according to the testimony, he already had) and then opened to door to its recalling

Haney in rebuttal to tell the jury that the gun to be traded was indeed a machine gun, not just an ordinary handgun.  Thus, while counsel might have delayed the introduction of the "machine gun" evidence, he could not have prevented its introduction once his client took the stand.

With regard to his second claim of ineffectiveness, the record is clear that the amount and type of drugs were plainly put before the jury without objection, *id*. at 95-96 & 100-101, and that the Court properly instructed the jury in that regard:

> If you find that the Defendant is guilty of possession with intent to distribute cocaine base, then you must unanimously determine the quantity of cocaine he possessed.  You must determine whether the Government has proven beyond a reasonable doubt that the Defendant is guilty of possession with intent to distribute fifty or more grams cocaine base as alleged in the indictment.  If you find that the Government has not proven beyond a reasonable doubt that the Defendant is guilty of possession with intent to distribute fifty or more grams cocaine base, then you must determine if the Government proved beyond a reasonable doubt that the Defendant is guilty of possession with intent to distribute five or more grams cocaine base.  If you find that the government has not proven beyond a reasonable doubt that the Defendant is guilty of possession with intent to distribute five or more grams cocaine base, then you must determine if the Government proved beyond a reasonable doubt that the Defendant is guilty of possession with intent to distribute cocaine base.

Doc. 52.  The verdict form required the jury first to determine Defendant's guilt on the charge and then the amount at issue.  Doc. 53.  The jury followed the Court's instructions and properly completed the verdict form.  *Id*.

When a defendant fails to object to factual matters in a presentence report, he is "deemed to have admitted those facts and [the] use of admitted facts to enhance a sentence does not constitute a Sixth Amendment violation under *Booker*."  *United States v. Hickman*, 175 Fed. Appx. 322, 324-5 (11th Cir. 2006).  Thus, the amount of drugs over and above the jury's finding of "fifty or more grams of cocaine base" was plainly established when Defendant failed to

object to the drug quantities in the Presentence Report.  However, in the end, it was not these "admitted facts" which made Defendant eligible for a life sentence, but rather, his criminal history.  Defendant had "two or more prior convictions for a felony drug offense," 21 U.S.C. § 841(b)(1)(A), and the jury found him guilty of possession with intent to distribute "fifty or more grams cocaine base.  Thus, counsel was not ineffective for failing "to make appropriate objections to the drug amount attributed to him through the doctrine of relevant conduct," Doc. 9, Mem. at 7, since this relevant conduct assessment did not impact Defendant's sentence at all.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 98, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **13th** day of February, 2007.


 s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**